UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AT&T CORP. and ALASCOM, INC. d/b/a AT&T Alascom, Inc.,

    Plaintiffs,

    v.

DONALD J. SCHROEDER, DAVID W. WALKER, and TERRY A. GUNSEL,

    Defendants.

Case No. C04-5709FDB

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE RICO CLAIM

**INTRODUCTION**

Plaintiffs AT&T Corp. and Alascom. Inc. (hereafter AT&T or Plaintiffs) filed a motion for partial summary judgment seeking summary judgment on their First (common-law fraud) and Seventh (RICO) claims. Meanwhile, the Court's October 17, 2005 "Order Granting in Part and Denying in Part Defendants' Motion To Dismiss and Staying Case" dismissed, *inter alia*, AT&T's claims for fraud (First Claim) rendering the summary judgment motion as to the First Claim moot.

Plaintiffs contend that Defendants used PT Cable (PTC), a corporation that they owned and controlled, "as a vehicle to swindle millions of dollars from AT&T and other international telecommunications carriers" (Plaintiff's Memo, p. 1) by overbilling them for their pro rata share of actual operations and maintenance (O&M) costs. In *PT Cable, Inc. v. Spring Communication Company LP and AT&T Corp.*, Case No. C03-5202FDB this Court determined that PTC overbilled

ORDER - 1

AT&T for O&M costs.  AT&T has received a judgment against PTC in that case for breach of the Indefeasible Right of User Interest Agreement and damages resulting from adding amounts in addition to AT&T's proper share of O&M costs.  The present case against the above-named individuals is premised on damages flowing both from the IRU's and the Construction and Maintenance Agreement (C&MA), but no double recovery is contemplated, states AT&T, as it has not collected any portion of its judgment against PTC and PTC is now in bankruptcy.  In addition to benefit-of-the-bargain damages, in this case AT&T seeks damages that flow from its tort claims, such as punitive damages, costs, and reasonable attorneys fees.

## DISCUSSION

While the fraud claims alleged in Plaintiffs' First Claim have been dismissed by the earlier referenced order, Plaintiffs are entitled to summary judgment on their RICO claims.

**RICO (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))**

A civil remedy is provided to any person injured in his business or property by reason of a violation of section 1962 and such person may sue therefor and obtain three-fold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.  Title 18 U.S.C. § 1964.

Title 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"In order to state a claim under section 1962(c), a plaintiff must allege the following:   1) conduct 2) of an enterprise 3) through a pattern (4) of racketeering activity." *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992), citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985).

The RICO statute is to "be liberally construed to effectuate its remedial purposes."  Pub. L. 91-452, § 904(a), 84 Stat. 947.

ORDER - 2

A corporate employee can be the RICO "person," while the corporation is the "enterprise," even if the person is merely acting within the scope of his authority as an employee of the corporation. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). One who "participate[s] in the operation or management of the enterprise itself" satisfies § 1962(c)'s requirement that defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

"Racketeering activity" is defined as violations of specified laws, including mail fraud, wire fraud, bank fraud, and interstate transportation of stolen property. *See* 18 U.S.C. § 1961(1).

A "pattern of racketeering activity" is defined in the statute to be "at least two acts of racketeering activity" occurring within a ten year period. 18 U.S.C. § 1961(5).

To constitute a "pattern" the predicate acts must be "related" and "continuous." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The requirement that the predicate acts be "related" means that "they share similar purposes, participants, victims, methods, or other distinguishing characteristics; in short they must not be isolated or sporadic." *Trustees of the Plumbers & Pipefitters Nat'l Pen. Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1144 (S.D.N.Y. 1995), *citing H.J. Inc.*, *supra*, 492 U.S. at 239-41.

The requirement that the acts be "continuous" may be over a "substantial period of time" or "include a specific threat of repetition extending indefinitely into the future" or the predicate acts were "part of an ongoing entity's regular way of doing business." *HJ, Inc.*, 492 U.S. at 241-42.

Plaintiffs contend that Defendants Walker, Schroeder, and Gunsel are "persons" associated with and who conducted the affairs of PTC, the "enterprise." Plaintiffs further contend that the "racketeering activity" element is satisfied in accordance with the statutory definitions as mail fraud, wire fraud, bank fraud, and interstate transportation of stolen property are alleged in the Complaint. Plaintiffs contend that the predicate acts, all relating to the sending of fraudulent invoices over a five-year period employed a consistent methodology of falsifying the actual O&M costs incurred and

ORDER - 3

were all directed to the carriers which owned capacity on the NPC, and who were obligated to reimburse the actual O&M expenses incurred.  In summary, according to Plaintiffs' contention, Defendants, individually and in combination, violated 18 U.S.C. § 1962(c) "with their scheme to bilk the carriers with fraudulent invoices sent through the mails." (Plaintiff's Memo, p. 24.)

Defendants argue against summary judgment on the RICO claim contending (1) that discovery is necessary to demonstrate specific intent to defraud; (2) that an "enterprise" must be shown by evidence that the Defendants "established a system of making decisions in furtherance of their alleged criminal activities, independent from their respective regular business practices." *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1112 (9th Cir 2003), *cert. denied*, 541 U.S. 1043 (2004); (3) citation to the Complaint does not satisfy the need to prove a "pattern of racketeering activity" by showing "related" and "continuous" violations of certain federal laws, and each of the predicate acts require proof of the elements of common law fraud.

Plaintiffs respond that Defendants misinterpret the cases they cite on the element of "enterprise." Plaintiffs correctly argue that the RICO enterprise must be something separate from <u>the racketeering activities</u> and not, as Defendants incorrectly cast it, "a RICO enterprise separate and apart from the <u>regular business affairs of PTC</u> [emphasis added].." For example, in *Wagh*, the Ninth Circuit explained:

> Under this Circuit's interpretation of the enterprise element, "the predicate acts of racketeering activity, by themselves, do not satisfy the RICO enterprise element." *Chang v. Chen*, 80 F.3d 1293, 1299 (9th Cir. 1996)(discussing the minimum requirements for an associated-in-fact enterprise).  A RICO plaintiff must allege a structure for the making of decisions separate and apart from the alleged racketeering activities, because "the existence of an enterprise at all times remains a separate element which must be proved." *Id.*  (citing *U.S. v. Turkette*, 452 U.S. 576, 101 S. Ct. 2524, 69 L.Ed.2d 246 (1981)).

348 F.3d at 1112.  Otherwise, as explained in *Chang v. Chen*, the "enterprise" element would be meaningless as any "pattern of racketeering activity" would satisfy the "enterprise" requirement.  The "enterprise" in this case is PTC, a legitimate business with a legitimate business purpose independent

ORDER - 4

of the asserted racketeering activity of sending fraudulent invoices sent through the mail. The Defendants' assertion that there is no proof of a "pattern of racketeering activity" fails, as the repeated mailing of fraudulent invoices that billed sums greater than Plaintiffs' pro rata share of actual O&M costs when Defendants knew that those invoices misrepresented the actual O&M costs, and which violated the plain language of the C&MA and the IRUs, constitutes such a pattern. The inflated invoices were sent repeatedly, as evidenced from the invoices presented to the Court in support of Plaintiffs' motion. Plaintiffs have demonstrated that the fraudulent invoices extended over five years, from 1998 to 2003, and this evidence satisfies the continuity requirement. *See, e.g., Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir. 1995)(open-ended continuity satisfied where, "had they not been fortuitously interrupted," the predicate acts "could have recurred indefinitely."). The conduct of obtaining payment based on fraudulently inflated invoices constitutes "racketeering activity" because it at least constitutes mail fraud, one of the federal statutes defined to constitute "racketeering activity." *See, e.g., Sandwich Chef of Tex. v. Reliance Nat'l Indem. Ins. Co.*, 111 F. Supp. 2d 867, 873 (S.D. Texas 2000)("The Court determines that overbilling during the performance of a contract may be the basis for a civil RICO mail fraud case."); *Fidelity Funding of Cal., Inc. v. Reinhold*, 79 F. Supp. 2d 110, 127-28 (E.D.N.Y. 1997)(fraudulent invoices.). Plaintiffs have demonstrated that the invoices were transmitted to AT&T in New Jersey through the U.S. mails. (Zammit Decl., Ex. 28 and 29 (representative AT&T and Alascom invoices) and Zammit Reply Decl. Ex. 47 and 48 AT&T and Alascom invoices.)

Plaintiffs have supported their RICO claim and Defendants have submitted no evidence to rebut Plaintiffs' showing. Defendants have already been provided with discovery through the earlier case mentioned above, during which Defendants were in charge of PTC, and the discovery provided included documents relating to the NPC, O&M costs, invoices, communications between the parties, comparative data on virtually every trans-Pacific and trans-Atlantic cable in which AT&T has been involved, and the loans used by Defendants to pay themselves dividends. (See Zammit Reply Decl. ¶

ORDER - 5

7.)  Moreover, Defendants received permission to use in this action, discovery obtained in the PTC action.  (Zammit Reply Decl. ¶¶ 2-9 and Exs. 41-45.)  Defendants made no showing that the additional discovery sought exists and that it would prevent summary judgment.  Defendants' response to Plaintiff's showing on the RICO claim is insufficient to overcome summary judgment.

## CONCLUSION

Plaintiffs have supported their summary judgment motion as to the RICO claim by demonstrating that Defendants conducted an enterprise, PTC, through a pattern of repeatedly mailing the above-referenced invoices containing knowing misrepresentations of the amounts of actual O&M charges owed, which mailing of fraudulent invoices constitutes "racketeering activity."  This "pattern" of repeatedly mailing fraudulent invoices makes the acts "related" as the mailings were regular, and not sporadic, and the victims were the same.  The continuity element is satisfied as this practice continued over five years before it was discovered.

NOW, THEREFORE, IT IS ORDERED:

1. Plaintiffs' Motion to file Motion for Summary Judgment Under Seal [Dkt. # 35] is GRANTED;

2. Motion of Plaintiffs AT&T Corp and its wholly-owned subsidiary Alascom, Inc. for Partial Summary Judgment [Dkt # 38] is GRANTED as to the Seventh Claim (RICO), the First Claim (fraud) having been dismissed in the Court's October 17, 2005 Order [Dkt. # 59].

DATED this 28th day of June, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 6