UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AT&T CORP. and ALASCOM, INC. d/b/a AT&T Alascom, Inc.,

  Plaintiffs,

  v.

DAVID W. WALKER, DONALD J. SCHROEDER, and TERRY A. GUNSEL,

  Defendants.

TERRENCE J. DONAHUE, Trustee for Chapter 7 Bankruptcy Estate of PT cable, Inc.

  Plaintiff-in-Intervention,

  v.

THE CARLYLE GROUP, L.P., a.k.a. The Carlyle Group; *et al.*

  Defendants-in-Intervention.

Case No. C04-5709FDB

ORDER DENYING CARLYLE DEFENDANTS MOTION TO DISMISS TRUSTEE'S COMPLAINT IN INTERVENTION

Defendants-in-Intervention the Carlyle Group, L.P.; C/S Venture Investors, L.P., Carlyle U.S. Venture Partners, L.P.; Carlyle Venture Partners, L.P.; and Carlyle Venture Coinvestment LLC (Carlyle Defendants) move to dismiss the Trustee's Complaint in Intervention against them. The

ORDER - 1

Carlyle Defendants assert that the Trustee's claims against them must be dismissed because the Trustee fails to allege a factual basis for the claims and because the claims are barred by the applicable statutes of limitations. The Court having reviewed the parties' memoranda and authorities concludes that the motion must be denied.

## BACKGROUND

Plaintiff-in-Intervention Terrence J. Donahue, the Trustee for the bankruptcy estate of PT Cable, Inc., seeks recovery for the benefit of the bankruptcy estate of PT Cable, Inc. and its creditors (as well as for the benefit of the creditors of Neptune Pacific, which merged into PT Cable shortly after the dividend transaction, which is a subject of the Complaint in Intervention). The Complaint in Intervention (Complaint or Trustee's Complaint) describes the various defendants under the heading "PTC Affiliated Defendants," which includes the Carlyle Defendants, as "business entities, associations or enterprises which have or had at relevant times, an ownership interest in, or some manner or degree of control over, PTC.

The Complaint goes on to describe The North Pacific Cable (NPC), a trans-Pacific fiber optic telecommunications cable between Japan and Oregon, with a branch or "spur" to Alaska. The NPC was constructed pursuant to a Construction and Maintenance Agreement (C&MA) by three "Founding Signatories" (PTC, Cable & Wireless PLC (C&W), and International Digital Communications Inc. (IDC) These three entities sold portions of their capacity to other telecommunications carriers, including AT&T. Sales of capacity occurred two ways: before the NPC went into service, a carrier could become an additional signatory to the C&MA by executing a supplemental agreement; after the NPC went into service in May 1991, a carrier could acquire capacity by entering into an Indefeasible Right of User Interest Agreement (IRU). The NPC was to be operated and maintained pursuant to the C&MA and the IRUs; thus, the entities owning cable capacity were to share the actual O&M costs on a pro rata basis. The Complaint describes how it came to be that PTC did not simply pass through the actual costs incurred in operating and

ORDER - 2

maintaining the NPC as required by the governing agreements, but that PTC included a substantial mark-up over the actual costs. This matter was the subject of *PT Cable, Inc. v. Sprint Communications Company, LP., et al.*, Cause No. C03-5202FDB, before this court.

The Trustee's Complaint details how Defendants Walker, Schroeder, and Gunsel came to purchase Pacific Telecom, Inc. using a joint venture company owned 28.5% by NGS, a company controlled by Defendants Walker, Schroeder, and Gunsel and 71.5% by the Carlyle Defendants, the purchase being financed principally through capital contributed by the Carlyle Defendants and bank loans. The subsequent appointment of company officers is described, including those placed on the board by the Carlyle Defendants. The loans we repaid by funds generated from the sale of the remaining capacity in the United States end of the NPC.

The Complaint next describes the 1999 loan and dividends whereby Defendants Walker, Schroeder, and Gunsel decided to monetize the future revenue stream generated from the fraudulent O&M billing and the Carlyle Defendants saw the benefit of this rather than risk discovery of the inflated billing that would interrupt the revenue stream. By means of a June 17, 1999 Note Purchase Agreement, $46.7 million of Senior Secured Notes were issued by PTC and Neptune Pacific to a group of insurance company lenders, New York Life and Jefferson-Pilot (Lenders) (Defendants herein). The Notes were secured by liens on essentially all of PTC's assets, including its accounts receivable. This transaction is referenced hereafter as the "Dividend Loan." The proceeds from this Dividend Loan (less transaction costs and a $1.7 million liquidity reserve) were not used for purposes related to the NPC or as working capital of any kind. Rather, within days of the Note Purchase Agreement, Neptune Pacific declared a dividend of $43 million, and in December 1999 a further dividend of $1.25 million was declared. The Complaint refers to these dividends as the "Illegal Dividend." Ultimately, "through subsequent upstreaming," the funds "wound up in the pockets of the PTC Affiliated Defendants and/or their ultimate owners, including various Carlyle Entities." The Lenders required a solvency opinion as a condition of making the loan, but according

ORDER - 3

to the Complaint, the solvency opinion produced by Defendant Kane Reece was based primarily on the erroneous assumption that PTC was entitled to make substantial profits on its O&M charges to carriers such as AT&T sufficient in excess of actual O&M costs to enable PTC to repay the principal and interest on the $46.7 million loan.  The Complaint sets forth further details regarding Kane Reece not being a disinterested expert and details what the Directors knew or should have known regarding Kane Reece's expertise in the undersea cable industry, among other things.

The Complaint details how Defendants Walker, Schroeder, and Gunsel gained sole control of PTC, how they continued with the inflated O&M billings at an increased level to order to repay the Lenders, its trade creditors, and to pay large salaries to the Directors and at least an additional $2 million in dividends.

The causes of action alleged are (1), Illegal Dividend, (2) Breach of Fiduciary Duty, (3) Fraudulent Transfer, (4) Aiding and Abetting Illegal Dividend, (5) Aiding and Abetting Breach of Fiduciary Duties, and (6) Alter Ego.

**DISCUSSION**

The Carlyle Defendants (Defendants) contend that because the Trustee has alleged that they acted as part of a fraudulent scheme to loot PTC, the Complaint is subject to the requirements of Fed. R. Civ. P. 9(b), which requires that "... the circumstances constituting fraud ... shall be stated with particularity."  To satisfy Rule 9(b), argue the Defendants, the "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Veiss v. Ciba-Geigy*, 317 F.3d 1097, 1006 (9th Cir. 2003).

The Trustee argues that the particularity requirements of Fed. R. Civ. P. 9(b) do not apply to claims from breach of fiduciary duty not involving specific allegations of fraud. *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1994).  Here, the Trustee explains, the alleged breach of fiduciary duty by the directors of PT Cable and Neptune Pacific is based on the conflicted directors' actions in self-interest as opposed to the interests of the corporation, violating their duty of loyalty, and the

ORDER - 4

director's approval of the loan and dividend transactions when in the exercise of due care, they knew or should have known of the impropriety of those transactions.  The Trustee further argues that the mere fact that the a complaint alleges some fraudulent conduct (background facts with respect to AT&T and Alascom) does not convert the entire complaint into a pleading subject to Rule 9(b) requirements.  Moreover, the Trustee argues that it is well recognized that Rule 9(b) is relaxed or liberally construed in bankruptcy settings because in such a case, as here, it is often a trustee acting on behalf of a bankruptcy estate and its creditors who is pleading fraud based on second-hand information.  *E.g. Smith v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180, 1201 (D. Ariz. 2001), *aff'd*, 421 F.3d 989 (9th Cir. 2005).

The Trustee's Complaint in Intervention is not subject to the heightened pleading standards for allegations of fraud.

> In a case where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). *Vess*, 317 F.3d at 1105.  "Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of rule 8(a).

*In Re Daou Systems, Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005).  The Trustee's Complaint in Intervention is not subject to the heightened pleading standard of Rule 9(b).  The breach of fiduciary duty allegations do not sound in tort.

As to the fraudulent transfer claim, the Carlyle Defendants argue that the pleading requirements are not met in that the Trustee (1) alleges no facts that the Carlyle Group, L.P. or the Carlyle Investment Funds received the transfers "with actual intent to defraud" creditors; (2) alleges no facts that there was a "constructive fraud" by the Carlyle Group, L.P. or the Carlyle Investment Funds; (3) no basis for recovery of the transfers from the Carlyle Defendants is alleged; (4) and no creditor has been identified who has standing to pursue this claim.

The Carlyle Defendants' arguments are not well taken.  The Trustee, pursuant to 11 U.S.C. § 544(b) may step into the shoes of a creditor holding an unsecured claim and invoke fraudulent

ORDER - 5

transfer statutes under state law. *See, e.g., In re OODC, LLC,* 321 B.R. 128, 139-41 and notes 4 & 6 (Bankr. Del. 2005). Only actual intent fraudulent transfers, as distinguished from breach of fiduciary duty or constructive fraudulent transfers, must be pled with particularity. Moreover, 11 U.S.C. § 550(a)(1) creates liability for an avoided transfer in the initial transferee and persons benefitted by the transfer, and Section 550(a)(2) creates liability in subsequent transferees: "any immediate or mediate transferee of such initial transferee." The statute at 11 U.S.C. § 550(b)(1) makes good faith an affirmative defense, and the Trustee need not plead a transferee's good or bad faith. *See, e.g., In re American Way Service Corp.*, 229 B.R. 496, 525-26 (Bankr. S.D. Fla. 1999). The Trustee has also alleged that there is a creditor with standing to pursue a state-law fraudulent transfer claim, into whose shoes the Trustee may step pursuant to 11 U.S.C. § 544(b). (Complaint in Intervention ¶ 4.8.)

The Carlyle Defendants argue that the fraudulent transfer claim is time-barred, but with the pleading of an unsecured creditor with standing to pursue an actual intent fraudulent transfer case under state law, the cause of action must have been brought within four years after the transfer "or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." RCW 19.40.091(a). *Freitag v. McGhie*, 133 Wn.2d 816, 823-24, 947 P.2d 1186 (1997).

The Court agrees that it is improper to dismiss the fraudulent transfer claim as time-barred under these circumstances. The Trustee also does not oppose dismissal of only the constructive fraudulent transfer claims in the Complaint.

Next, the Carlyle Defendants argue that the Trustee's Complaint fails to state a claim for aiding and betting breach of fiduciary duty because (1) the Trustee has not pleaded a predicate breach of fiduciary duty (insufficient facts); (2) the allegations regarding Carlyle's intent and substantial assistance do not satisfy Rule 9(b)(no facts showing that the Carlyle Defendants actually knew or should have known that the directors were purportedly breaching their duties or provided

ORDER - 6

any assistance; (3) there are no allegations that the damages were proximately caused by the Carlyle Defendants; and (4) the claim is time barred because not brought within the three-year statute of limitations period under Delaware law.

Having reviewed the Trustee's Complaint, however, the Court agrees with the Trustee's arguments that the cause of action for aiding and abetting breach of fiduciary duty has been adequately stated for purposes of notice pleading. The Complaint also states that damages were proximately caused to PT Cable and its creditors by rendering PTC insolvent and unable to pay its anticipated debt as it came due. The claim is not time-barred as Delaware recognizes three forms of equitable tolling of the statute of limitations: 1. The doctrine of inherently unknowable injuries; 2. The doctrine of fraudulent concealment; and 3. The doctrine of equitable tolling. The Trustee's claim of abuse of the fiduciary relationship was not known by creditors at any time prior to the bankruptcy petition because of the Defendants concealment of their activities, and the Trustee's allegations support one or more bases for equitable tolling listed above.

The Carlyle Defendants argue that the "vague allegations" of the Illegal Dividend claim fail to state a claim and must be dismissed because (1) the Trustee lacks standing to assert claims brought on behalf of the company's creditors; (2) Delaware law does not recognize or permit direct recovery against shareholders or partial owners of the shareholders for an illegal dividend; (3) the Trustee has failed to allege with requisite particularity that the dividend was illegal; and (4) the claim is untimely, as it should have been brought within six years from the time of the dividend payment under Delaware law. The Carlyle Defendants also argue that there is no cause of action for aiding and abetting an illegal dividend.

The Court agrees with the Trustee that he has standing to pursue these claims relating to general injury suffered by all creditors. "The existence of such indirect injury to creditors notwithstanding, it is 'axiomatic' that a trustee has authority to bring 'actions against the debtor's officers and directors for breach of duty or misconduct.'" *Smith v. Arthur Andersen LLP,* 421 F.3d

ORDER - 7

989, 1004 (9th Cir. 2005). Moreover 8 Del. Code Ann. § 174(a) provides that directors are liable "to the corporation, and to its creditors in the event of its dissolution or insolvency." The Trustee, not an individual creditor, may bring such an action. *In re Sunshine Precious Metals, Inc.*, 157 B.R. 159, 164 (Bankr. *Id.* 1993). The Trustee cites several cases for the proposition that courts have recognized an implied cause of action under Section 174 against such shareholders. The Trustee has adequately set forth the financial conditions rendering the dividends unlawful, including setting forth the problem with the solvency opinion obtained by the Lenders at the time of the dividend loan. Finally, the Trustee was given authority to intervene to prosecute the illegal dividend in the cause of action herein filed by AT&T against Defendants Schroeder, Walker, and Gunsel in October 2004, which was within the six-year limitations period provided in 8 Del. Code Ann. § 174(a)(the statute cited in the Complaint) The claim to recover unlawful dividends was still viable on January 5, 2005, the date of the bankruptcy petition, and 111 U.S.C. § 108(a) provided a two-year extension of time from the March 22, 2005 order for relief in the bankruptcy case.

Finally, the Trustee has determined that a separate claim for aiding and abetting an illegal dividend would be duplicative of the existing claim for aiding and abetting breach of fiduciary duty and, therefore, does not oppose the separate dismissal of the aiding and abetting the illegal dividend claim.

The Carlyle Defendants argue that as to the Alter Ego claim, there are no allegations that the Carlyle Defendants have exercised domination or control over any of the challenged actions, and also there is no showing of fraud or injustice in the use of the corporate form or that there was a lack of attention to corporate formalities, commingled assets, or intertwining of their respective operations.

The Trustee responds that the allegations listed by the Carlyle Defendants are examples of situations supporting an alter ego determination. The Trustee argues that "veil-piercing" may be used to impose liability on controlling entities despite the existence of intermediate entities and complex business structures. *E.g. In re Buckhead America Corp.*, 178 B.R. 956, 975 (D. Del.

ORDER - 8

2004). Moreover, the Trustee has not yet had opportunity to take discover of the various entities to determine their precise workings. The "nature and extent of dominion and control exercised by defendants" is a question of fact not subject to resolution on a motion to dismiss. *Buckhead America*, 178 B.R. at 975.

The Court agrees that the Alter Ego claim is not subject to dismissal at this early stage.

NOW, THEREFORE, IT IS ORDERED: the Motion of The Carlyle Group, L.P., C/S Venture Investors, L.P., Carlyle U.S. Venture Partners, L.P., Carlyle Venture Partners, L.P., and Carlyle Venture Coinvestment, LLC, to Dismiss Trustee's Complaint in Intervention is DENIED, except as to the unopposed motion to dismiss the Trustee's causes of action for (a) constructive fraudulent transfers and (b) aiding and abetting unlawful dividends.

DATED this 6th day of September, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 9