1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

AT&T CORP. and ALASCOM, INC. d/b/a
AT&T Alascom, Inc.,

11

12          Plaintiffs,                           Case No. C04-5709FDB

13     v.                                          ORDER DENYING MOTION OF
                                                   DEFENDANTS CONWAY,
14  DAVID W. WALKER, DONALD J.                     DARMAN, AND COBURN TO
    SCHROEDER, and TERRY A. GUNSEL,               DISMISS THE TRUSTEE'S
                                                   COMPLAINT IN INTERVENTION
15          Defendants.

16  _____
    TERRENCE J. DONAHUE, Trustee for
17  Chapter 7 Bankruptcy Estate of PT cable, Inc.

18          Plaintiff-in-Intervention,

19     v.

20  THE CARLYLE GROUP, L.P., a.k.a. The
    Carlyle Group; *et al.*

21          Defendants-in-Intervention.

22
                            **BACKGROUND**
23
        Defendants-in-Intervention William E. Conway, Jr., Richard G. Darman, and Brooke B.
24
    Coburn move to dismiss the Trustee's Complaint in Intervention.  Plaintiff Terrence J. Donahue is
25

26  ORDER - 1

1   the Trustee for the Chapter 7 bankruptcy estate of PT Cable, Inc. (PTC)  The moving defendants are

2   described in the Trustee's Complaint as follows:  Coburn is a director, officer, and agent of PTC, and

3   Conway and Darman are board members, officers, and agents of Neptune Pacific Holdings, Inc.

4   Neptune Pacific Holdings, Inc. is the former 100% owner of PTC.  The following summary is

5   derived from the Trustee's Complaint in Intervention (Trustee's Complaint).

6        The organization and interrelatedness of the entities and individuals associated with the North

7   Pacific Cable (NPC)(a fiber optic telecommunications cable between Japan and Oregon with a spur

8   to Alaska) is somewhat complex.  Briefly, and based on the Trustee's Complaint, Neptune

9   Communications, LLC (NCLLC) owned 100% of Neptune Pacific Holdings, Inc. (NPH), which in

10  turn owned 100% of PT Cable.  Neptune Global Systems (NGS) had a 28.5% interest in NCLLC,

11  and the Carlyle Group, L.P. Defendants had a 71.5% interest in NCLLC.  Individual Defendants

12  Conway, Darman, Schroeder, and Sorenson were officers and directors of NPH, Schroeder, Walker,

13  Coburn, and Gunsel were officers and directors of PT Cable.  Schroeder and Walker, and later

14  Gunsel, owned NGS.  Conway, Darman, and Coburn were each managing directors and, Conway

15  was the founding partner and Darman a senior advisor of the Carlyle Group, L.P.

16       The gist of the Trustee's Complaint is that in managing the North Pacific Cable (NPC), the

17  telecommunications carriers who utilized capacity of the NPC, and who were to pay their pro rata

18  share of actual operations and maintenance costs, were instead sent invoices that included a

19  substantial, hidden mark-up.  In 1999, Defendants Walker, Schroeder, and Gunsel decided to

20  monetize this future revenue stream, and the Carlyle Group Defendants decided that this

21  monetization of this revenue stream was more beneficial than risking discovery and interruption of

22  the revenue stream in the future.

23       Thus, in June 1999, $46.7 million in senior secured notes were issued by the Defendants

24  Insurance Company Lenders pursuant to a Note Purchase Agreement, and these notes were secured

25  by liens on essentially all of PTC's assets, including its accounts receivable.  The Trustee refers to

26  ORDER - 2

1   this as the "Dividend Loan," as no portion of these proceeds went to PTC, but instead went to

2   PTC's parent company Neptune Pacific Holdings.  None of the proceeds were used as working

3   capital of any kind; rather, within days of the June 1999 Note Purchase Agreement, Neptune Pacific

4   declared a dividend of $43 million, and in December 1999 declared a further dividend of $1.25

5   million, which disposed of all the borrowed funds except for transaction costs and a $1.7 million

6   liquidated reserve.  Ultimately, the funds wound up in the pockets of the PTC Affiliated Defendants

7   and/or their ultimate owners including various Carlyle Entities.

8          While the Lender Defendants conditioned the Loan on their receipt of a solvency opinion, the

9   solvency opinion provided by Defendant Kane Reese Associates was incorrect in its conclusions as it

10  was based on the false assumption that PTC was entitled to make substantial profits on its

11  Operations and Maintenance charges to carriers such as AT&T.

12         In March 2003, AT&T commenced litigation against PTC in United States District Court in

13  New Jersey seeking, *inter alia*, to recover the overpayments it had made with respect to its

14  Indefeasible Right of User Interest Agreement (IRU).  The matter was transferred and consolidated

15  with the *PT Cable, Inc. v. Sprint Communications Company, LP and AT&T Corporation,* C03-

16  5202FDB, pending in this court, and in which, AT&T and Sprint were granted summary judgment.

17                                    **DISCUSSION**

18         Defendants Conway, Darman, and Coburn move to dismiss the Trustee's Complaint because

19  first, there are no specific allegations with regard to the breach of fiduciary duty claims and these

20  directors are protected by a presumption that they acted on an informed basis in good faith; second,

21  the Trustee lacks standing to assert a claim for unlawful dividends, and even if he had standing, the

22  Trustee acknowledges that PT Cable continued to pay its debts for years after the dividends were

23  issued; and third, the Trustee's claims are time-barred.  The Trustee has responded to the motion.

24  The Court having considered the parties' submissions, argument, and authorities, concludes that the

25  Defendants' Motion must be denied for the following reasons.

26  ORDER - 3

1    *1. Breach of Fiduciary Duty*

2        Defendants Conway, Darman, and Coburn argue that they are protected by the "business

3    judgment rule that creates the presumption that "in making a business decision the directors of a

4    corporation acted on an informed basis, in good faith and in the honest belief that the action taken

5    was in the best interests of the company." *Aronson v. Lewis*, 473 A2d 805, 812 (Del. 1984).   The

6    Trustee does not dispute this general rule, but argues:

7        Allegations of self-dealing disrupt the usual presumption that directors have acted
         with reasonable business judgment however; only disinterested directors may benefit
8        for the presumption of good faith and due care bestowed by the business judgment
         rule ... .  Thus, a complaint alleging that directors transacted business on behalf of the
9        corporation that resulted in their personal enrichment is sufficient to state a cause of
         action for breach of such interested directors' duties of good faith and loyalty, and it
10       is incumbent upon the directors to prove that the transaction was fair to the
         corporation.

11
     *In re Sheffield Steel Corp.*, 320 B.R. 405 (Bankr. N.D. Okla. 2004)(denying dismissal of complaint
12
     alleging breach of fiduciary duty under Delaware law, where directors caused corporation to pay
13
     dividends to themselves and affiliated companies, and corporation was or became insolvent as a
14
     result of the dividends).
15
         The facts alleged in this case, and summarized above, are similar to those in *Sheffield Steel*.
16
     The Trustee has made sufficient allegations to overcome the applicability of the business judgment
17
     rule.  The Trustee has alleged Boards dominated by conflicted directors either engaged in self-
18
     dealing (Defendants Walker, Schroeder, and Gunsel) or lacking independence due to the domination
19
     and control of affiliated entities (the Carlyle Directors)(Conway, Darman, and Coburn).
20
         Assuming for the purposes of argument that the Carlyle Directors did not have knowledge of
21
     the improper nature of the inflated O&M charges and the "monetization" of them to pay dividends,
22
     the Trustee's Complaint alleges that they should have had such knowledge in the exercise of
23
     reasonable care.  The Directors had an obligation with regard to loans secured by a projection of a
24
     future income stream to analyze the projections and formulate or seek a competent opinion as to
25

26   ORDER - 4

1  their legitimacy.  To do otherwise is simply to abdicate their duties as directors.

2  While the corporate charter may contain an exculpatory clause for duty of care liability, the

3  Trustee has claimed breaches of the duties of loyalty and good faith, which must be assessed before

4  the exculpatory clause is given effect.  The duty of loyalty demands of officers and directors their

5  undivided and unselfish loyalty to the corporation, free of conflict between duty and self-interest.

6  *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939).  The Complaint here alleges self-interest and lack of

7  independence by the directors who paid dividends to themselfs and their affiliated companies in

8  violation of the duties of good faith and loyalty.

9  The Trustee agrees that as a general rule, breach of fiduciary duty claims are subject to a

10  three-year statute of limitations in Delaware.  Delaware, however, recognizes three forms of tolling

11  the statute of limitations: (1) the doctrine of inherently unknowable injuries; (2) the doctrine of

12  fraudulent concealment; and (3) the doctrine of equitable tolling.  *EBS Litigation LLC v. Barclays*

13  *Global Investors, N.A.,* 304 F.3d 302, 305 (3rd Cir. 2002).  Here, the Trustee alleges abuse of

14  fiduciary relationship through actionable self dealing and also alleges concealment of the Defendants'

15  activities and that creditors did not learn of facts surrounding the loan and dividend transactions at

16  any time prior to the bankruptcy petition.  These allegations support equitable tolling of the statute of

17  limitations on one or more of the above bases.

18  ### 2. Unlawful Dividend

19  Defendants argue that the Trustee lacks standing to bring an unlawful dividend claim and that

20  such claim belongs to the corporate creditors.  Defendants also argue that the unlawful dividend

21  claim is time-barred .  Finally, Defendants argue that Defendant Coburn should be dismissed as he

22  had no role in authorizing dividend payments from NPH to its shareholder NCLLC.

23  The Court does not agree with Defendants' arguments.  While the Trustee does not have

24  standing to pursue a claim for a creditor's particularized injury, the Trustee for the bankruptcy estate

25  of PT Cable does have standing to pursue claims relating to dissipation of assets that limit a firm's

26  ORDER - 5

1    ability to repay its debts, which inability injures both creditors and the corporation.  *See, Smith v.*

2    *Arthur Andersen LLP*, 421 F.3d 989, 1004 (9th Cir. 2005).  Additionally, as to unlawful dividends

3    specifically, 8 Del. Code Ann. § 174(a) provides that directors are liable "to the corporation, and to

4    its creditors in the event of its dissolution or insolvency."  The power to bring an action for unlawful

5    dividends upon bankruptcy under 8 Del. Code Ann. § 173 belongs to the trustee, as such an action is

6    derivative in nature, alleging general damage, not particularized injury to a single creditor.  *In re*

7    *Sunshine Precious Metals, Inc.*, 157 B.R. 159, 164 (Bankr. Id. 1993).  The Trustee has alleged that

8    neither PT Cable nor Neptune Pacific had a surplus or net profits to support a lawful dividend under

9    Delaware law.  (Compl. ¶ 4.1) Additionally, the Trustee's Complaint also alleges that the solvency

10   opinion provided to the Defendant Lenders by Defendant Kane Reece had no factual basis, was

11   incorrect, and dependent upon an improper assumption that PT Cable was entitled to charge inflated

12   O&M costs.  (Compl. ¶¶ 3.23– 3.27)

13          As to Defendant Coburn's liability, the Trustee stresses that the preservation of capital to pay

14   creditor indebtedness before distribution is made to stockholders is a deeply-rooted, fundamental

15   doctrine in Delaware law.  Further, courts look to the substantive economic effect rather than

16   concentrating on the form of a transaction, and transfers having the economic effect of depleting the

17   debtor's assets and transferring them to shareholders may be actionable as unlawful dividends.  *E.g.,*

18   *Crowthers McCall Patterns, Inc. v. Lewis*, 129 B.R. 992, 1001 (S.D.N.Y. 1991).  PT Cable may

19   never have touched the loan proceeds in this case, but it borrowed them and, in economic substance

20   paid them to its parent Neptune Pacific for further distribution to PT Cable's ultimate owners.  Even

21   if PT Cable took no action, however, it may be liable for aiding and abetting the Neptune Pacific

22   directors' breach of fiduciary duty in multiple ways: (1) by conducting and overseeing improper

23   O&M billing practices that supported future income projections, (b) permitted PT Cables assets to be

24   encumbered to facilitate the secured loans, and (c) permitting PT Cable's borrowed funds to be used

25   by Neptune Pacific for dividend purposes, without PT Cable having received none of the proceeds.

26   ORDER - 6

1   The Trustee's unlawful dividend claim is timely, it being viable on January 5, 2005, the date of the

2   bankruptcy petition, and 11 U.S.C. § 108(a) provides a two-year extension of time from the order

3   for relief in the bankruptcy case (which issued March 22, 2005).  The Trustee timely filed his

4   Complaint on April 6, 2006.

5                                              **CONCLUSION**

6        For the foregoing reasons, the Court concludes that the motion of Defendants Conway,

7   Darman, and Coburn must be denied.  The Trustee has sufficiently alleged breach of fiduciary duty

8   claims, the Trustee has standing to assert an unlawful dividend claim, and the claims against these

9   defendants are not time-barred.

10       NOW, THEREFORE, IT IS ORDERED: The Motion of Defendants Conway, Darman, and

11  Coburn To Dismiss The Trustee's Complaint In Intervention [Dkt. # 98] is DENIED.

12

13       DATED this 11th day of September, 2006.

14

15

16       FRANKLIN D. BURGESS
         UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26  ORDER - 7